# CASES

IN THE

# SUPREME COURT OF ALABAMA.

## NOVEMBER TERM, 1889.

## Pulliam *v.* The State.

*Indictment for Murder.*

1. *Dying declarations* —The declarations of the deceased in this case, made several weeks after he was shot with a pistol by the defendant, while he was confined in bed, and ten or eleven days before his death from the effects of the wound received, stating the particulars of the difficulty, and preceded by the declaration 'that he was sure to die, and did not expect to live," were properly admitted as dying declarations, although the bill of exceptions, not purporting to set out all the evidence, does not show what proof was adduced as to the nature and character of the wound, or as to the physical condition of the deceased at the time the declarations were made.

2. *Former threats by defendant against deceased.*—Threats made by the defendant against the deceased, nearly three years before the fatal difficulty, declaring that he "would kill deceased if it took him ten years to do it," are admissible evidence against him; there being, also, evidence of other threats, "at different times, down to the time of the difficulty."

3. *Abstract charge.*—A charge asked, which, though it may assert a correct legal proposition, is not supported by any evidence set out in the bill of exceptions, may be refused because it is abstract.

FROM the Circuit Court of Tallapoosa.

Tried before the Hon. JAS. R. DOWDELL.

The indictment in this case was found at the September term, 1889, and charged that the defendant, Jasper Pulliam, "unlawfully and with malice aforethought, but without premeditation, killed Anderson Ross, by shooting him with a pistol." Issue being joined on the plea of not guilty, the defendant was convicted of manslaughter in the first degree, and sentenced to the penitentiary for the term of four years. On the trial, he reserved the following bill of exceptions: "On the trial, among many other witnesses, the State intro-

[Pulliam v. The State.]

duced Mack Rabb, and asked him, if he ever heard the de-
fendant make any threats against the deceased; to which he
answered: 'Three years ago this September, I heard him
say, that he would kill the deceased if it took him ten years
to do it.' The defendant objected to this evidence, and
moved to exclude it from the jury; which motion and objec-
tion the court overruled, and the defendant excepted. There
was, also, evidence of other threats made by the defendant
against the deceased, at different times, down to the time of
the difficulty. The State then introduced Joe Hughes as a
witness, who testified, that he was. at the house of the de-
ceased one week and four days before his death, when de-
ceased was in bed, where he had been confined for several
weeks from wounds or pistol shot made by defendant; that
the deceased then said, in his presence, that he would not
get well—that he was sure to die, and did not expect to live.
On this predicate, the State asked for the declarations of the
deceased; to which the defendant objected, and excepted to
the overruling of his objection. The witness then stated,
that deceased told him, at the time and place mentioned, that
he met defendant, on the night of the shooting, near Mr.
Boone's residence in Camp Hill, deceased being on the side-
walk, while defendant was in the road; that he, deceased,
asked defendant, 'How old are my children?' and defendant
replied: 'That is a pretty question to ask me. I don't know
how old your children are'; that deceased then said, that
defendant had told Bud Spinks that his (deceased) children
were too old to get public school funds; that defendant re-
plied: 'It is a damned lie, I didn't tell him any such
thing'; that he (deceased) was at the time standing on the
side-walk, with both arms over a walking-stick across his
back, looking into Mr. Boone's yard, when defendant shot at
him with a pistol, but missed him; that he looked around,
and asked defendant what he meant, when defendant shot
him with a pistol in the leg. The defendant moved to ex-
clude all of this answer from the jury, which motion the
court overruled, and the defendant excepted. The State
then introduced Aaron Murphy as a witness, who was a
brother of the deceased, and who testified, that he was at
the house of the deceased about eleven days before his death,
and before his leg was amputated; that no one was present
but witness, deceased, and his family; and that deceased then
said, that he was going to die, and did not expect to live.
On this predicate, the State asked the witness for the decla-

ration of the deceased ; to which the defendant objected, and excepted to the overruling of his objection. Witness answered, that the deceased then told him that the defendant· shot him for nothing. The defendant moved to exclude this answer from the jury, but the court overruled his motion, and the defendant excepted."

"The defendant excepted to that part of the general charge of the court which was in these words: 'When a homicide is shown, the law presumes malice, unless the evidence which shows the killing rebuts that presumption'; and he requested the following charges in writing: (1.) 'If the jury believe that the further retreat of the defendant would have endangered his life, or subjected him to great bodily harm, he was not required to retreat further, but was authorized to strike in self-defense; and if, in so striking, he killed Anderson Ross, then the jury will find him not guilty.' (2.) 'If it appeared to the defendant, at the time of the shooting, that there was a necessity for shooting to protect his life, or himself from great bodily harm, then he was authorized to shoot, and the jury must find him not guilty, provided he did not bring on the difficulty.' The court refused these charges, and the defendant duly excepted to their refusal."

T. L. BULGER, and TOMPKINS & TROY, for appellant, cited Taylor on Evidence, vol. 1, §§ 718, 720; Best on Evidence, § 505, note 1; Clark's Manual, § 538; *Walker v. State*, 52 Ala. 192; *Ben v. State*, 37 Ala. 103; *Mose v. State*, 35 Ala. 421; *State v. Williams*, 67 N. C. 12.

W, L. MARTIN, Attorney-General, for the State, cited 3 Brick. Digest, 226; § 674; *Ib.* 443, § 567.

STONE, C. J.—Dying declarations are received as evidence only in trials for homicide. They are limited in their scope to the act which causes the death, and the attendant circumstances, or *res gestæ*. It is essential to their admissibility that, at the time when they were made, the declarant should have been in actual danger of death, that he should then have had a full apprehension of his danger, and that death has ensued.—1 Taylor Ev. § 718. "It is the impression of impending death, and not the rapid succession of death in point of fact, which renders the testimony admissible."—*Ib.; Reynolds v. State*, 68 Ala. 502; Whar. Cr. Ev. §§ 282-3-4; 3 Brick. Dig. 226, §§ 663 *et seq.;* Clark's Manual, §§ 538 *et seq., Hussey v. State*, 87 Ala. 121.

[Parker v. The State.]

The record does not contain all the evidence, and fails to inform us as to the physical condition of the deceased at the time the declarations were made. We are not only uninformed as to the effect the wound had produced, but there is an entire absence of testimony as to the nature or extent of the wound itself, and of its particular locality. In the absence of proof to the contrary, we must presume these facts were shown to the court below, and that they were such as to show, at least, that deceased had plausible grounds for the opinion he expressed. He had been wounded, was suffering under the effects of the wound, and from those effects he subsequently died. Immediately before making the declarations which were offered in evidence, deceased said, "he would not get well, he was sure to die, and did not expect to live." To another witness he said, "he was going to die, and did not expect to live." The Circuit Court did not err in receiving the statements of deceased as dying declarations.

The proof of previous threats made by the accused was clearly admissible.— *Walker v. State*, 85 Ala. 7.

The court rightly refused to give the charges asked, even if, in a proper case, they assert correct legal principles. The record fails to show any testimony to which those charges were properly applicable; and for all we can know, they may have been refused because they were abstract. We will not consider their sufficiency.—3 Brick. Digest, 113, §§ 106, *et seq.*

Affirmed.

88   4
94   47
88   4
107  21

*Indictment for Murder.*

