[Walker v. The State.]

# Walker v. The State.

## Indictment for Murder.

1. *Act creating Fourteenth Judicial Circuit; when first term of court should be held.*—Under the act of the legislature, approved March 6, 1903, creating the Fourteenth Judicial Circuit, providing that there should be two terms of the court for Walker county, the first term to begin on the first Monday in January, and may continue with the exception of two weeks to the 30th day of June, and the second term should convene on the first Monday in September and may continue until the 31st day of December of each year, did not have the effect to fix a term of the court to begin on the first Monday in January, 1903, that time being prior to the passage of the act, and there is nothing in said act to authorize the convening of the court for the holding of a regular term on any day in March subsequent to the passage of the act. Therefore, a grand jury of said court, organized on March 16, 1903, was not legally organized, and an indictment preferred by such a grand jury, was subject to be quashed. (McClellan, C. J., and Dowdell, J., *dissenting.*)

2. *Trial and its incidents; when action of the court as to examination of small boy as to his competency, without injury.*—When, before entering upon the trial of a case, the witnesses are called to be sworn, and the defendant requests the court to examine a small boy who was called as a witness, as to his competency before having him sworn, the court's refusal to comply with this request, if error at all, is error without injury, when it does not appear that the witness testified in the case.

3. *Dying declarations; admissibility in evidence.*—On a trial under an indictment for murder, where the deceased, after having stated that she could not get well and was bound to die, and told her sister what she wanted done with her children, statements then made by the deceased as to the identity of the defendant as the person who had inflicted the fatal wounds, are admissible in evidence as dying declarations.

4. *Same; same.*—Statements made by a deceased should not be excluded as dying declarations, upon the ground that they were

[Walker v. The State.]

made while the deceased was under the influence of opiates, when the physician who was in attendance upon her stated, that while she was under the influence of morphine it did not make her flightly, but made her sleep some.

5. *Same; same.*—Where statements of a deceased tending to identify the defendant as the party guilty of the homicide, have been introduced in evidence as dying declarations, it is competent for the State to prove by other witnesses, that the person referred to and described by the deceased, was the defendant.

6. *Homicide; admissibility of evidence.*—On a trial under an indictment for murder, where it is shown that the defendant was arrested shortly after the homicide, it is competent for the officer who arrested the defendant to testify that when he went to the house of the defendant, he found a box in his house with blood stains on the lid, it having been shown·that the deceased, when found, was very bloody.

7. *Same; same.*—On a trial under indictment for murder, where the evidence tending to show that the defendant was guilty of the homicide was circumstantial, it is not competent for the defendant to prove that when arrested, he asked to be taken before the deceased for identification.

8. *Same; same; proof of motive.*—On a trial under an indictment for murder, evidence of motive on the part of a third person to commit the murder. is not admissible where there is no testimony tending to connect such person with the commission the crime.

9. *Trial and its incidents; discretionary with the court to allow witness to be recalled.*—On the trial of a criminal case, after the defendant has finished the examination of his witnesses, it is discretionary with the court to permit the State to recall one of its witnesses for further examination; and the exercise of this discretion is not reviewable.

10. *Argument of the counsel before the jury.*—In his argument before the jury, an attorney, in commenting upon the testimony of a witness. who had made contradictory statements, is within the range of legitimate argument in saying that he would leave it to the jury to say whether she told the truth upon the stand, or when talking to the sheriff, and in asking the question, if it was not more reasonable to belive that she was telling the truth when talking to the sheriff, than when she testified on the stand.

11. *Charge of court as to reasonable doubt.*—A charge is properly refused as being argumentative, which instructs the jury that "A reasonable doubt, within the meaning of the law, is such

[Walker v. The State.]

as would cause a resonable, prudent and considerate man, in the graver and more important affairs of life, to pause and hesitate before acting upon the truth of the matter charged, and if you have such doubt in this case, you must acquit the defendant."

12. *Same.*—A charge is erroneous and properly refused which instructs the jury that "upon the trial of a criminal case, if a reasonable doubt of any facts necessary to convict the accused is raised in the minds of the jury, by the evidence itself, or by the argument of counsel, based upon any hypothesis reasonably consistent with the evidence, that doubt is decisive in favor of the prisoner, and he should be acquitted."

13. *Charge of court in criminal case.*—A charge is properly refused, which instructs the jury that "the law deems it better that the guilty go unpunished, than that the innocent should suffer."

14. *Same.*—A charge asserts a correct proposition of law and is properly given at the request of the State, which instructs the jury that "The fact that when charged with the commission of a crime the defendant refuses to flee, but surrenders himsex to the proper authorities, can not be considered as showing his innocence of the offense charged."

APPEAL from the Circuit Court of Walker.

Tried before the Hon S. H. SPROTT.

The appellant in this case, Henry Walker, was indicted and tried for the murder of Maggie Dickinson, was convicted of murder in the first degree and sentenced to be hanged.

On the trial of the case, it was shown that Mrs. Dickinson, the deceased, who was the wife of Joseph Dickinson, was found at her house, lying across a bed, in an unconscious condition; that her clothes and the bed were very bloody and that her skull was fractured from several wounds with a blunt instrument of some sort, and that from the effects of these wounds she died. It was also shown that at the same time her husband was in an unconscious condition, having been wounded by a severe blow.

Upon the introduction of several witnesses for the State, they testified that they went to the Dickinson house the morning after Mrs. Dickinson was injured.

and that Mrs. Dickinson said that she could not get well
and was bound to die and gave directions as to the care
and disposition of her children.

The State then offered to prove by one of
these witnesses, declarations which were made by
the deceased, as dying declarations, and the wit-
ness testified that Mrs. Dickinson said that a
negro inflicted the wounds; that the negro who
inflicted the said wounds was "one who used to
work for Capt. B. M. Long, was a tall, black negro and
wore dark clothes, dark shirt, grey hat and blue over-
alls, and that she had seen the same negro the day before
in front of Hattie Somerville's house with a gun oiling
it; that she did not know the negro's name."    The de-
fendant objected to the introduction of these statements
of the deceased as dying declarations, upon the ground
that it was not sufficiently shown that the deceased was
properly impressed that she was going to die, and upon
the further ground that she was not competent to make
the statements on account of the wounds and opiates
which had been administered to her.

Dr. Miller, the physician who was in attendance upon
the deceased on the morning the statements were made,
testified that while she was under the influence of mor-
phine it did not make her flighty but made her sleep
some.  The court overruled each of these objections, and
to each of these rulings the defendant separately ex-
cepted.

Mrs. Somerville, a witness for the State, testified that
the negro the deceased had seen in front of her gate the
evening before she was killed, was the defendant.  The
defendant objected to this testimony, and moved to ex-
clude it, on the ground that it was irrelevant, immate-
rial and incompetent.  The court overruled the objection,
and the defendant duly excepted.  Against the objection
and exception of the defendant, the State also proved
that the defendant answered the description as given by
the deceased in her dying declarations, and that he used
to work for Capt. B. M. Long.

The defendant made a showing as to what one of his
absent witnesses would testify, which was admitted by

State subject to legal objections. In this statement, it was allegd that the absent witness would testify, if present, that some time prior to the time of the killing of Mrs. Dickinson, her husband, Mr. Dicknson, attempted to arrest a negro and had a difficulty with him; that the witness saw the said negro in the town where the deceased was killed the night before the crime was committed, but had not seen him since. The State objected to the introduction of this showing in evidence upon the ground that it was irrelevant and immaterial, and incompetent. The court sustained the objection, and the defendant duly excepted.

The evidence for the defendant tended to show that he did not inflict the wounds upon Mrs. Dickinson from which she died; he testifying as a witness in his own behalf that he did not do so, and further testifying that the night the wounds were inflicted, he went to the house of Maggie McClure, where he lived, about 9 o'clock and remained there all through the night.

Maggie McClure, a witness for the defendant, testified that the defendant came to her house, where he lived, on the night that Mrs. Dickinson was injured, and remained there. throughout the night. Upon her cross examination, she denied that she had told the sheriff and other persons with him, that the defendant came to her house btween midnight and day. The sheriff and the other persons who were with him, testified that Maggie McClure told them that the defendant came to her house the night Mrs. Dickinson was injured, between midnight and day.

There was also evidence introduced that when the defendant was arrested, the person arresting him was afraid to carry him through the town of Cordova, where the killing occurred, and directed him to walk around the town and meet him at a certain place on the road to Jasper, where he was to be carried and put in jail, and that the defendant did as directed and met the officer at the point designated.

Upon the examination of George O'Rear, as a witness for the State, he testified that he knew the defendant

[Walker v. The State.]

and arrested him just after Mrs. Dickinson was found
with the wounds inflicted upon her; that he found the
defendant at his house and found at the foot of his bed
a box with blood on the lid. The defendant objected to
the statement as to this witness having found the box
with blood on the lid, and moved to exclude it. The
court overruled the objection and motion, and the de-
fendant duly excepted.

The facts relating to the other rulings of the court
upon the evidence are sufficiently shown in the opinion.

During his argument to the jury, Mr. Bankhead, at-
torney for the State, made the following statements:
"Gentlemen of the jury, I leave it to you to say whether
Maggie McClure told the truth when she told the sheriff
and others that defendant did not come home until after
midnight, or whether she has told it on the trial. Is it
not more reasonable to believe that she was telling the
truth then rather than when she testified on the stand?"
The defendant objected to this portion of the argument
of the attorney for the State, and moved to exclude it.
The court overruled the objection and motion, and the
defendant duly excepted.

The court at the request of the State, gave to the jury
the following written charge: "The fact that when
charged with the commission of a crime the defendant
refuses to flee, but surrenders himself to the proper au-
thorities, cannot be considered as showing his innocence
of the offense charged." The defendant duly excepted
to the court's giving this carge, and also separately ex-
cepted to the court's refusal to give each of the following
written charges requested by him: (1.) "I charge you,
gentlemen of the jury, that a reasonable doubt within the
meaning of the law, is such as would cause a reasonable,
prudent and considerate man, in the graver and more
important affairs of life, to pause and hesitate before
acting upon the truth of the matter charged, and if you
have such doubt in this case, you must acquit the defend-
ant." (2.) I further charge you, gentlemen of the jury,
that upon the trial of a criminal case, if a reasonable
doubt of any facts necessary to convict the accused is
raised in the minds of the jury, by the evidence itself, or

by the argument of counsel, based upon any hypothesis reasonably consistent with the evidence, that doubt is decisive in favor of the prisoner, and he should be acquitted. (3.) "Gentlemen of the jury, I charge you that the law deems it better that the guilty go unpunished than that the innocent should suffer." (4.) "I charge you, gentlemen of the jury, that the policy of the law deems it better that many guilty persons should escape, rather than one innocent person should be convicted and punished; so that unless you can say, after a careful consideration of all the evidence in this case, that you believe beyond all reasonable doubt and to a moral certainty that the defendant is guilty, then you should find him not guilty."

J. D. ACUFF and L. D.GRAY, for appellant.—The term of the circuit court at which the indictment against this defendant was preferred was illegal and void, not having convened within the time required by law, and the court, therefore, had no jurisdiction over the defendant, and it was not necessary for him to file any plea.—Code, § 922; 21 Encyc. Pl. & Pr. 637-8; *State v. Tally,* 102 Ala. 74; *Ex parte Branch,* 63 Ala. 384; *Davis v. State,* 46 Ala. 81.

The court erred in permitting the State to prove that the deceased said she had seen the negro pass her house the day before, as it was no part of the *res gestae. Johnson v. State,* 102 Ala. 1, and authorities cited.

The defendant ought to have been permitted to prove that he asked to be taken before Mrs. Dickinson, when he was arrested and accused.—*Chaney v. State,* 31 Ala. 342; *Jones v. State,* 103 Ala. 1; *Williams v. State,* 105 Ala. 96.

MASSEY WILSON, Attorney-General for the State. The act creating the 14th judicial circuit went into effect on March 6, 1903, the date of its approval by the Governor.—23 A. & E. Encyc. Law (1 ed.) p. 213.

The fact that George Dickinson, small boy, was sworn before he was shown to be competent to testify, was

without injury to defendant, it not appearing that he testified in the case.—Code, § 4333.

The circumstances showed that deceased believed she could not recover from the effects of her wounds, at the time she made the dying declarations.—*Pulliam v. State*, 88 Ala. 1.; *Hussey v. State*, 87 Ala. 121.

Had the woman lived and offered to testify that the guilty man was the negro who had worked for Capt. Long the year before and who had passed her house the day before, the testimony would have been clearly competent, tending as it does to *identify* the defendant. *Fowler v. State*, 100 Ala. 96, 99; *Newell v. State*, 115 Ala. 54; *Yarbrough v. State*, 105 Ala. 43.

The fact that defendant asked to be taken before Mrs. Dickinson for identification by her, was not admissible, being an effort on the part of the defendant to make testimony for himself. Such testimony is excluded on the same principle and for the same reason that the failure of a defendant to flee from the scene of his crime, cannot be proven by him.—*Pate v. State*, 94 Ala. 15; *Johnson v. State*, 94 Ala. 35, 40; *Chamblee v. State*, 78 Ala. 466.

There being no testimony tending to connect the negro referred to in the deposition of Henry Walker with the crime charged against Walker, evidence of a motive on the part of the third person is inadmissible.—*Banks v. State*, 72 Ala. 522; *Levison v. State*, 54 Ala. 520; *Alston v. State*, 63 Ala. 180; *Prince v. State*, 100 Ala. 144; *Brown v. State*, 120 Ala. 342, 348.

Charge 1 was held bad in *Allen v. State*, 111 Ala. 80.

Charge 2 was properly refused. The argument of counsel should not have the effect of creating in the minds of the jury a reasonable doubt of the defendant's guilt, but such doubt must arise from the evidence. *Green v. State*, 97 Ala. 59, 64.

Charges 3 and 4 were properly refused.—*Barnes v. State*, 111 Ala. 56; *Perry v. State*, 87 Ala. 30.

DOWDELL, J.—The act creating the 14th judicial circuit, approved March 6, 1903, page 88, fixed the terms of the circuit court for Walker county—the first term

beginning the first Monday in January, "and may continue until the 30th day of June, except the two weeks beginning the third Monday in February." The second term, "shall be held on the first Monday in September and may continue until the 31st day of December."

The court at which the indictment in this cause was found was convened and organized on Monday, the 16th day of March, 1903. It is now contended that the court was not legally organized, because, as urged by counsel, the time for organizing the court for the term as fixed by the act creating it had passed, and the court stood adjourned by operation of law until the time for holding the next term, which began the first Monday in September. In support of this contention section 922 of the Code is cited. That section reads as follows: "When any circuit judge fails to attend, the court stands adjourned from day to day until 3 o'clock in the afternoon of the third day, when it is adjourned until the next succeeding term." This section can have no possible application under the facts in the case before us. On the day fixed in the act for the commencement of the first term, namely, the first Monday in January, there was no such court in existence, nor a judge of such court. The act was not approved until March 6, when it went into immediate effect, and a judge of said court was immediately thereafter appointed. All this occurring within the period covered by the first term as fixed by the act. The act provides that a judge and solicitor of the circuit created shall be appointed by the Governor as soon as practicable after its passage, thus clearly, as we think, indicating a purpose and intention on the part of the legislature, that the act should go into immediate effect for all purposes. The court was convened and regularly organized within the time for holding the first term, and in the opinion of the writer, was legally convened and organized. In this view McClellan, C. J., concurs; but the majority of the court are of a different opinion, holding that the effect of the act was not to fix a term of the court to begin on the first Monday in January, 1903, that time being prior to the passage of the act, and that

in the act there is nothing to authorize the convening of the court for the holding of a regular term on a day in March, 1903.

Before entering upon the trial the court required the witnesses to be called and sworn. The defendant requested the court to examine George Dickinson, a small boy, as to his competency before having him sworn, which the court refused to do, and the defendant at the time excepted. The bill of exceptions states that "the court told the witness not to be sworn at that time. The witness stood up with the other witnesses and was sworn, but the court's attention was not called to it at the time." If there was error in the court's action, it was clearly without injury to the defendant, for it does not appear that this witness testified in the case, and the bill of exceptions purports to set out all of the evidence, and in doing so gives the names of the witnesses testifying.—Code, § 4333.

The predicate was sufficiently laid for the admission of dying declarations. It was shown that at the times the statements were made the declarant was under the belief that she could not recover from the wounds and that she would die from them.—Pulliam v. State, 88 Ala. 1; Hussey v. State, 87 Ala. 121.

The dying declarations were also objected to upon the ground that they were made while the party was under the influence of opiates. The evidence on this subject was by Dr. Miller, who testified, "that Mrs. Dickinson, after the first morning, was under the influence of morphine. That it did not make her flighty, but made her sleep some." There was no merit in the objection and the court properly overruled it. In the course of the dying declaration made by the deceased, she referred to the defendant as the negro who had passed her house the day before and stopped and oiled his gun, and stated that Mrs Somerville could tell who it was; she also referred to him as the man who had worked for Captain Long the year before. The defendant objected to this testimony on the ground that it was not a part of the res gestae. This evidence tended to identify the defendant

[Walker v. The State.]

as the guilty party, and for that purpose it was both competent and relevant, and the fact that the statement was made as a dying declaration, instead of under oath on the witness stand, rendered it none the less admissible. Like any other way or manner of description of the person, it furnished means of identification. For the same reason it was also competent for the State to prove by Mrs. Somerville that the negro seen in the front of Mrs. Dickinson's house on the day before, oiling his gun, was the defendant. There was no error in overruling the defendant's objection to the witness O'Rear's statement as to the blood stains on the box lid.

The defendant offered to prove that he asked to be taken before Mrs. Dickinson for identification, but on the objection of the State, the court refused to allow this evidence. This testimony was properly excluded on the same principle and for the same reason that the refusal of a defendant to flee from the scene of his crime, cannot be proven by him. It is regarded in the light of an effort to make evidence in his own behalf.—*Pate v. State,* 94 Ala. 15; *Johnson v. State, Ib.* 35, 40; *Chamblee v. State,* 78 Ala. 466.

There being no testimony tending to connect the negro referred to in the showing made by the witness Gene Miller, with the crime charged against the defendant, evidence of motive on the part of a third person was inadmissible.—*Banks v. State,* 72 Ala. 522; *Levison v. State,* 54 Ala. 520; *Alston v. State,* 63 Ala. 180; *Prince v. State,* 100 Ala. 144; *Brown v. State,* 120 Ala. 342.

The ruling of the court permitting the witness John Davidson to be recalled to testify was discretionary, and, therefore, not reviewable on appeal.

The remarks of the solicitor which the court refused to arrest upon defendant's motion, were within range of legitimate argument, and no error was committed in this ruling by the court.—*Stone v State,* 105 Ala. 60; *McNeil v. State,* 102 Ala. 121.

Charge 1 requested by the defendant, was condemned by this court in *Allen v. State,* 111 Ala. 80.

A reasonable doubt must be based upon the evidence

in the case, and not upon the argument of counsel, to authorize an acquittal.

Charge 2 which requested an acquittal if a reasonable doubt was raised in the minds of the jury by the argument of counsel, was properly refused.—*Green v. State,* 97 Ala. 59.

It is sufficient to say that similar charges to 3 and 4 have been repeatedly condemned by this court.

There was no error in the giving of the charge requested by the State. It certainly states the law.

For the error pointed out, the judgment will be reversed and the cause remanded, and the defendant will be held in custody until discharged by law.

Reversed and remanded.

McCLELLAN, C. J., and DOWDELL, J., *dissenting.*