(96 South. 892)

### KIRKLAND v. STATE. (4 Div. 73.)

(Supreme Court of Alabama. June 14, 1923.)

**1. Homicide ⬥187 — Evidence of previous threat against defendant by companion of accused held properly excluded.**

In a prosecution for murder, where deceased at the time of the killing had been shown to have been accompanied by a woman, *held*, that it was not error to exclude testimony that

such woman had previously threatened to kill defendant; she being a third party and such threat having been at a different time and place, and there being no evidence of deceased's knowledge of or connection with it.

**2. Criminal law ⬥368(1)—Evidence of statement made by third person to deceased just previous to killing held part of res gestæ.**

In a prosecution for murder, testimony by a witness that, while deceased and others were in a room, he entered and told deceased he had better come out before he got killed, *held* admissible as part of the res gestæ; it having been made within defendant's hearing and just previous to the killing, which deceased was leaving in response to the request.

**3. Homicide ⬥187 — Testimony of previous threat and attack against defendant by companion of deceased held inadmissible.**

In a prosecution for murder, where deceased at the time of the homicide was shown to have been accompanied by a woman, testimony that such woman had previously attempted to cut defendant with a knife, and said that she was going to kill him, *held* inadmissible.

**4. Homicide ⬥300(14)—Instruction on law of self-defense held fatally defective and properly denied.**

In a prosecution for murder, denial of an instruction that, "unless the jury is convinced beyond a reasonable doubt that defendant was at fault in bringing on the difficulty, and could have made his escape without increasing his danger, they should acquit," *held* fatally defective, in that it ignored an essential of self-defense, under Code 1907, § 5364, as amended by Gen. Acts 1915, p. 815, in that there must be a present impending peril to life or great bodily harm, either real or so apparent as to create a bona fide belief of an existing necessity.

Appeal from Circuit Court, Henry County; H. A. Pearce, Judge.

Bud Kirkland was convicted of murder in the first degree, and appeals. Affirmed.

Lee & Tompkins, of Dothan, for appellant.

The charge requested by defendant should have been given. Dent v. State, 105 Ala. 14, 17 South. 94.

Harwell G. Davis, Atty. Gen., for the State.

No brief reached the Reporter.

MILLER, J. Bud Kirkland was indicted, tried, and convicted of murder in the first degree. He was charged in the indictment with killing Major Jones by shooting him with a pistol under such circumstances as constituted murder in the first degree. The jury convicted him of murder in the first degree as charged in the indictment, and fixed his punishment at imprisonment in the penitentiary for life.

There was a party and supper at a negro

house in Henry county, at which defendant and many others were present. The evidence for the state tended to show that Major Jones, the deceased, and a woman by the name of Dora Jackson, came to the house of the party about 11 or 12 o'clock p. m. They went into the house, and soon. afterwards defendant went into the house and said to Major, "You think you can bully me around and hit Major." A difficulty then ensued, the defendant shooting Major Jones,, from which he afterwards died. Defendant also shot Son Coleman,. a brother-in-law of the deceased, and the defendant was struck and cut by deceased, or Son Coleman, or both, after the shooting occurred. The evidence for the defendant tended to show he was struck with a bottle by some one, which provoked the difficulty, and that he was afterwards cut in several places by the deceased and Son Coleman, and while they were cutting him he used his pistol and shot them.

[1] Dan Skipper, the first witness for the state, was asked the following question by the defendant:

"I will ask you if you did not hear Dora Jackson, at Headland, on the Saturday previous to the night that she came there with Major [deceased], tell Bud [defendant] she was going to kill him?"

The court would not permit the witness to answer this question. In this the court did not err. This was an attempt to prove a threat by a third party at a different time and place, and there is no evidence or offer to prove that the deceased knew of it,.or participated in it, or was present, at Headland, when it was made. True, deceased came with Dora Jackson to the party; but this in no way connected him with a threat made by her against defendant on Saturday before the difficulty. This witness also testified:

"That Mayor Jones and Dora came along singing and hugged up."

The defendant was with witness at the well, and the defendant said:

"There goes a woman-I used to know, and they think they are bullying me."

Witness stated:

"I said to him, 'I would not pay any attention to that woman; she will get you in trouble, more trouble than you can get out of.' "

The defendant went on down to the house. His brother tried to keep him (defendant) from going in the house. Witness, continuing, testified:

"He slung his brother away and went in the house, and he and I went behind him. Major was in the house on a bench, crying, when I got to the door. I did not see Bud Kirkland do anything to Major before the shooting. I heard somthing like a brick."

[2] The following question was asked:

"Then, when you get there, what did you do? A. In there, or right around the door, I says, 'Major, you come out of here before you get killed.' "

The defendant moved to exclude the answer, which was refused by the court, and the defendant excepted.

"The .testimony showed that Major was several feet from it [door]; and witness then said, 'I told Major to come out, and when Major got up and put his hand on my shoulders, Bud. shot him, and then Major went out behind me on the veranda.' "

There was no objection to the question, but the court did not err in refusing the motion to exclude the answer. They were all in the same room; the deceased, immediately after the remark, in response to it, got up, started out, and was shot by the defendant; it appears defendant was close enough to have heard it. It clearly appears from the evidence and circumstances to be a part of the res gestæ of the difficulty. . Harbour v. State, 140 Ala. 103, headnote 5, 37 South. 330.

[3] The defendant by several witnesses attempted to prove,' but the court would not permit him to do so, the following:

"That on Saturday, previous to the difficulty at Headland, Ala., Dora Jackson tried to cut the defendant with a knife, and said that she was going to kill him."

This was not competent, relevant evidence. It was particulars of a former difficulty with a third party; it was a threat by a third person; there was no proof and no offer to prove that deceased knew of the occurrence, was present, participated in it, and approved of it. Because Dora came with deceased to the party would not make this evidence relevant and. competent. Stitt v. State, 91 Ala. 12, 8 South. 669, 24 Am. St. Rep. 853; Walker v. State, 139 Ala. 56, 35 South. 1011.

[4] The defendant requested, and the court refused, the following written charge:

"Unless the jury is convinced beyond a reasonable doubt that the defendant was-at fault in bringing on the difficulty, and could not have made his escape without increasing his danger, they should acquit the defendant."

This,charge is fatally defective, as it ignores the second essential element of self-defense:

"There must be a present impending peril to life, or of great bodily harm, either real, or so apparent as to create the bona fide belief of an existing necessity." Jackson v. State, 77 Ala. 18, headnote 6.

The court in its oral charge to the jury clearly, stated the law of self-defense applicable to the testimony in this case; the court gave the jury the elements of self-defense, and defined and stated the doctrine of it nec-

essary to the jury. Section 5364, as amended by Gen. Acts 1915, p. 815. The court did not err in refusing to give that charge to the jury.

We find no error in the record, and the judgment must be affirmed. ·

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.