# Saulsberry v. The State.

## Murder.

(Decided June 29, 1912. 59 South. 476.)

1. *Homicide; Evidence; Corpus Delicti.*—The evidence stated and examined and held sufficient to establish the corpus delicti.

2. *Same.*—Where it appeared that the accused and an alleged accomplice left the place where the crime was committed on the morning following, it became a question for the jury whether this was flight promoted by a guilty conscience, or as claimed by defendants, merely a change of abode for business purposes and in pursuance of a previously formed plan.

3. *Same.*—In a trial for homicide, where it was shown to be voluntary, the admission of inculpatory expressions by defendant was proper.

4. *Same; Motive.*—Where it appeared that deceased was commonly referred to as "the old German" it was competent to show that about 30 days before the killing defendant and an alleged accomplice, in the presence of others, discussed "the old German," the amount of money he had, and a plan to get him into a crap game and win his money; that defendant went away and on his return said he could not find him that night, that there was "nothing doing," but that he would see him later, and that the person accused of being an accomplice said: "Dead men tell no tales," as tending to show motive, it not being too remote for consideration.

5. *Same.*—Where it was claimed that the motive was robbery, it was competent to show the amounts of money drawn by defendant and an accomplice on pay day, and the amounts expended by them following the commission of the crime.

6. *Same.*—It was proper on a trial for murder to permit a minute inquiry into the conduct of deceased, the alleged accomplice and the decedent on the day previous to the killing, on the night it took place, and that of defendant and accomplice on the following morning, and during their stay in a city to which they went that morning.

7. *Same; Persons Liable.*—Under the evidence in this case, charges were properly refused which required an acquittal unless defendant was actually present at the scene of the crime when it was committed, and actually participated therein.

8. *Witnesses; Impeachment; Contradictory Statement.*—Where the proper predicate had been laid therefor, it was proper to admit statements by defendant in contradiction of his testimony, and as the court instructed the jury of the limited purpose for which such statements were admitted, no prejudice accrued to defendant.

9. *Charge of Court; Reasonable Doubt.*—A charge asserting that if any juror felt the desire for more testimony "to prove to find

[Saulsberry v. The State.]

the guilt" beyond a reasonable doubt they should acquit, was both confusing and misleading in its terms, and properly refused.

10. *Same.*—The charge that the jury might consider the facts that a witness introduced by the state had been convicted of forgery, and if, after considering all the evidence, the jury had a reasonable doubt of defendant's guilt, growing out of the testimony of such witness, they might acquit, was properly refused as, independent of any such testimony, the jury might have been convinced beyond a reasonable doubt of defendant's guilt.

11. *Same.*—A charge that defendant was presumed to be innocent until proved guilty beyond a reasonable doubt, and that the evidence authorizing the conviction should not be a mere preponderance of probability, but should be so strong and convincing, etc., was properly refused as requiring a too high degree of proof.

12. *Same; Argumentative.*—A charge asserting that the law does not desire to punish persons only reasonably guilty, but only those who are guilty to a moral certainty, was a mere argument and properly refused.

13. *Same.*—A charge that the jury was not called on to avenge the murder of deceased, and that before a verdict of guilty would be authorized, they must believe from the evidence beyond a reasonable doubt and to a moral certainty that defendant was guilty, was a mere argument and properly refused.

14. *Same; Confusing or Misleading.*—A charge asserting that in order to convict upon circumstantial evidence, it was necessary not only that all the circumstances concur to show that defendant committed a crime, but that they should be inconsistent with any other conclusion, and that it was not sufficient that the circumstances proved "coincide with, and therefore probable, the hypothesis sought to be established," but that they must exclude to a moral certainty every hypothesis but that of guilt, is confusing and misleading and properly refused.

15. *Same.*—A charge asserting that if the jury are in such a state of doubt and uncertainty that they could not say who killed deceased, they should acquit, was properly refused as being misleading in its tendencies; the question being not who killed deceased, but whether or not defendant was guilty or innocent, as there was an issue of conspiracy between defendant and an accomplice as shown by the evidence.

16. *Same; Credibility of Witnesses.*—A charge asserting that if any material part of the testimony of any witness for the state was willfully false, it was the duty of the jury to disregard such testimony, was properly refused; while the jury may disregard entirely the testimony of such a witness, it is not their duty to disregard all the testimony of the witness, when only a part is shown to be willfully false.

APPEAL from Gadsden City Court.

Heard before Hon. JAMES A. BILBRO.

[Saulsberry v. The State.]

Joe Saulsberry was convicted of murder in the first degree, and he appeals. Affirmed.

The exceptions to the evidence are sufficiently noted in the opinion. The following charges were refused to the defendant: A. "If any juror, before pronouncing a verdict of guilty in this case, feels the desire for more testimony to prove to find the guilt of the defendant beyond a reasonable doubt, the law requires him not to convict the defendant." H. "The law does not desire the punishment of persons who are only reasonably guilty, but only those who are guilty, and guilty to a moral certainty." G. "I charge you, gentlemen of the jury, that, in order to convict the defendant upon the evidence of circumstances, it is necessary not only that all the circumstances concur to show that the defendant committed the crime charged, but that they are inconsistent with any other conclusion. It is not sufficient that the circumstances proved coincide with and therefore probable, the hypothesis sought to be established by the prosecution, but that they must exclude to a moral certainty every hypothesis but the single one of guilt, or the jury must find the defendant not guilty." J. "If, in view of all the evidence, you have a reasonable doubt as to whether or not the defendant was at the place the crime was committed at the time it was committed, you should acquit him." N. "The court charges the jury that it is the duty of the state to show by the evidence beyond a reasonable doubt that the defendant was present and participated in the killing of the deceased, and, if the action of the defendant during the night is inconsistent with his guilt, then you must find the defendant not guilty." Q. "The court charges the jury that the burden is on the state to show by the evidence beyond a reasonable doubt that this defendant was present and participated in the killing of

Shintzen, and the state has not carried the burden unless the evidence excludes to a moral certainty that no other than this defendant or Wiley Goforth killed him." L. "I charge you, gentlemen of the jury, that you may look to the fact that the witness Bob McCoy has been convicted of forgery, in determining what weight you will give to his testimony, and if you find, after considering all the evidence, that you have a reasonable doubt of the defendant's guilt growing out of the testimony of Bob McCoy, you must acquit." O. "The court charges the jury that the defendant is presumed to be innocent until his guilt is established beyond all reasonable doubt, and the evidence to authorize and induce a conviction should not be a mere preponderance of probability, but should be so strong and convincing as to lead the minds of the jury to the careful and guarded conclusion that the defendant cannot consistently with any reasonable hypothesis be innocent." P. "The court charges the jury that, if any material part of the testimony of any witness who has sworn on behalf of the state in this prosecution was willfully false, then it is the duty of the jury to disregard such evidence." S. "The court charges the jury that, if the evidence in this case leaves the mind of the jury in such a state of doubt and uncertainty that they cannot say who killed the deceased named in the indictment, then the jury must acquit the defendant." T. "The jury was not called upon to avenge the murder of the deceased, and, before a verdict of guilt would be authorized, the jury must believe from the evidence beyond a reasonable doubt and to a moral certainty that the defendant is guilty."

CULLI & MARTIN, and J. B. AIRD, for appellant. The court improperly admitted the inculpatory admissions.

—*Wilson v. State,* 84 Ala. 426; *Shelton v. State,* 144 Ala. 111; *Owen v. State,* 78 Ala. 428; *Kelly v. State,* 72 Ala. 245; *Gregg v. State,* 106 Ala. 47; *Anderson v. State,* 104 Ala. 87. Charge A should have been given. —94 Ala. 104.. Charge B and C should have been given. *Robinson's Case,* 57 South. 829; *Simmons' Case,* 158 Ala. 15; *Walker's Case,* 153 Ala. 32. Charge E. correctly states the law.—*Ex parte Acree,* 63 Ala. 234; *Gilmore v. State,* 99 Ala. 160. Charge F should have been given.—*Mills v. State,* 55 South. 322; *Burkett v. State,* 154 Ala. 30. Charge G was a correct statement. *Childs v. State,* 58 Ala. 349. Charge L should have been given.—138 Ala. 30; 117 Ala. 24; 115 Ala. 1; *Mills v. State, supra.* Charge N should have been given for the reasons and upon the authority assigned as to charges B. and C. Charge R was proper, as was charge S.— *Boyd v. State,* 150 Ala. 103.. Counsel discuss other charges refused, but without further citation.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, and BOYKIN & BAILEY, for appellee. Counsel discuss assignments of error relative to evidence, but without citation of authority. The balance of their briefs is devoted to a discussion of given charge 2, which does not appear to have been discussed by the court in its opinion, and it is therefore not deemed necessary to here set out the discussions as to such charge.

McCLELLAN, J.—The defendant (appellant) was convicted of the murder of Nicholas Shintzen. During the progress of the trial there were taken for the defendant 69 exceptions to the rulings of the court on the admission or rejection of evidence. At the conclusion of the evidence, the defendant's counsel requested the

court to give to the jury 101 special charges. The court
gave 79 of these special charges as requested for the
defendant, and refused to give the remaining 22. The
state requested, and the court gave, 10 special charges
from that side of the bar. Whether any others were re-
quested for the state does not appear.

The body of the deceased was found, in the early
morning of July 21, 1911, under, or partially under,
the elevated front of the house in which he alone lived.
His head had been crushed by two or more blows with
a blunt instrument. His head was nearly severed from
his body. A pool of blood was nearby the steps to the
door to his house, and this pool of blood was somewhat
covered over with fine coal. There were spatters of
blood on the side of the house and on the door thereto.
An iron bolt rod, some 14 inches long, with a tap or
taps screwed on one end, and as large as a broom han-
dle, was found about the scene. On this was blood
and, some said, hair. The body was clothed. The pock-
ets contained no valuables. There were indications that
the body had been dragged under the house. About
the body, beneath the floor, were two tracks made by
a man's shoes in the earth. The body was unshod. The
scene of the crime was Altoona, Etowah county, Ala.

That the corpus delicti was first fully proven is clear.
Hence all those objections to testimony, on the ground
that the corpus delicti had not been proven, were with-
out merit.

The issue was whether the defendant was a guilty
agent in the killing of Shintzen—otherwise called in the
record "the old German." The theory of the state was
that defendant and one Wiley Goforth murdered him
from mercenary motives. There was no positive, direct
evidence that they or either of them, committed the
crime. The reliance to connect them therewith was,

in part, circumstantial evidence. The evidence offered by the prosecution was, if credited by the jury, sufficient to justify the conviction of this defendant. It was not possible under the evidence to give the affirmative charge for the defendant.

The defendant denied his guilt, and offered in support of his innocence his previous good character and some evidence tending to show that he was throughout the night during which the crime was committed not at the scene thereof.

For the prosecution there was testimony tending to show flight, by defendant and Goforth, to another state. They left Altoona the morning the body was found as stated. Whether their departure was *flight* promoted by a consciousness of guilt, or was but the pursuit of a plan, formed some weeks before then, as their testimony tended to show, to change their abode for business reasons, was a jury question under all the circumstances appearing in the evidence.

There was, on the trial, earnest objection by the defendant's counsel to the admission of a number of inculpatory expressions by this defendant as well as the reception of secondary evidence of the contents of two notes alleged to have been written by defendant to Goforth, who was then confined in a different part of the jail in which defendant was confined. Where expressions of the defendant were offered as affirmative evidence of the guilty connection of this defendant with the crime charged, the proper predicate was laid—they were shown to be voluntary within the familiar rule thereof. Such was the case with the gravely inculpatory statements which McCoy testified defendant made to him, as well as with respect to the like character of statements asserted to have been made by this defend-

ant to other witnesses. Where other statements were offered by the prosecution *in contradiction* of the defendant as a witness in his own behalf, proper predicates were laid therefor, and the court affirmatively advised the jury of the limited purpose for which such evidence was admitted to their thus restricted consideration.

There was no error in any of the rulings of the classes to which reference is just made.

The state was allowed to introduce testimony to the effect that defendant and Goforth, at a ball game about 30 days before the tragedy, discussed, in the presence of others, the "old German," the amount of money he had, and a plan to get him into a crap game in which he was not skilled, and win his money. It was further shown by one Davenport that, on the occasion just mentioned, defendant went off from the game, was gone awhile, and said, upon his return, that he could not find him that night; that there was "nothing doing;" would "see him later." This witness also testified that Goforth said, "Dead men tell no tales." It is not to be doubted from this record that the deceased was quite commonly referred to in that mining settlement as "the old German." That allusion, if made by the defendant and Goforth on the occasion in question, was, clearly, to the man who then worked in the mine defendant did and who was later slain. The relevancy of this testimony otherwise is not open to question. If the motive for the crime was robbery, this testimony tended, immediately, to show that defendant and Goforth had entertained and expressed ideas that consisted with the result. The statements Davenport testified to were not too remote for legitimate consideration of the identity of the criminal agent or agents effecting the old German's death.

The court very properly permitted a minute inquiry into the conduct of deceased and of Goforth and defendant on the day previous to the killing and on the night it took place, and of that of defendant and Goforth on the morning after, and during their stay in Birmingham; the amounts of money drawn on pay day, the amount defendant expended at Altoona, Birmingham, and en route to Arkansas, and after their arrival there. If defendant had funds in excess of those he could account for, it was, of course, a circumstance bearing upon the issue in the premises.

All of the 69 exceptions reserved to rulings on the admission and rejection of evidence have been carefully considered, and we find no error in any of those rulings.

Charge A, refused to defendant, is, as this record recites it, confused in its terms. But, aside from that justification for its refusal, it was faulty under the reasoning of *Shepperd v. State,* 94 Ala. 102, 10 South. 663.

The following special charges refused to defendant were covered by special charges given for him: B, C, D, E, F, M, U, V.

Charge H was argumentative.

Charge G is unintelligible, as we have it. Its refusal was justified for that reason, if not others.

Charge I was the affirmative charge for defendant. As stated, it could not have been given.

Charge J would have incorrectly restricted defendant's guilt to his presence at the scene of the crime at the time it was committed. Obviously, his guilt, under our law, may have been found under this evidence without his actual participation in the killing or without his actual presence at the scene thereof. Hence this

charge, as well as those lettered N and Q, was well refused.

Charge L predicated an acquittal in consequence of a reasonable doubt arising out of the testimony of McCoy. A conviction of guilt, to the requisite degree, might have prevailed with the jury independent of McCoy's testimony. The charge was well refused.

Charge O was properly refused. It exacted too high a degree of proof to justify a conviction.

*Mills' Case,* 1 Ala. App. 76, 55 South. 331, cannot be taken as approving charge P, even though, as here drawn, it contained the word *material.* The charge is affirmatively bad. It is not the *duty* of the jury to disregard *all* of a witness' testimony in consequence of the fact (if so) that the witness has been found by the jury to have sworn willfully falsely in respect of a *part,* though material in some aspects, of his testimony. Other evidence in the case may corroborate or tend to confirm that *part* of his testimony to which he is not found to have willfully falsely sworn. That the jury *may* disregard entirely the testimony of such a witness is, plainly, a very different matter from holding their *duty* to be to disregard *all* when only a part has been shown, to their satisfaction, to be willfully false.

Charge S exacted an acquittal if the jury were of such confused, uncertain mind that they could not say *who* killed the deceased. The question was the guilt or innocence of the defendant. It was not that propounded by the implication of the charge. In consequence, the tendency of the charge was to mislead the jury. Besides, the charge ignored the issue of conspiracy presented by the evidence in the case. Charge A, in *Boyd's Case,* 150 Ala. 101; 43 South. 204, was, as appears, entirely different from the charge under review.

Charge T was, as suggested in brief for appellant, argumentative, and due to be refused.

Numerous charges touching the sufficiency or degree of conviction of guilt requisite to justify a verdict to that end were given at defendant's request.

We find no error in the record. The judgment is affirmed.

Affirmed. All the Justices concur.