(123 So. 50)

## CARTER v. STATE. (6 Div. 130.)

Supreme Court of Alabama. June 6, 1929.

Rehearing Denied June 27, 1929.

O. S. Finch and Jim Gibson, both of Birmingham, for appellant.

Charlie C. McCall, Atty. Gen., and J. W. Brassell, Asst. Atty. Gen., for the State.

BOULDIN, J. Will Carter was indicted for the murder of Sam Harris, was convicted of murder in the first degree, and his punishment fixed at death.

■ Evidence for the state tended to show: The killing occurred at the by-product plant of Sloss-Sheffield Company in North Birmingham. It was pay day. A difficulty arose between Isham Carter, a brother of defendant, and Ed Tarwater, watchman at the pay office, touching Isham's position in the pay line. In course of this difficulty, Tarwater struck Isham over the head with a pistol. Isham then went to his home some three blocks away and within some 15 to 20 minutes returned with his brother, this defendant; Isham was armed with two pistols, and Will with one; Isham promptly assailed Tarwater, slapping and kicking him while holding the pistols on him; Will was acting with his brother; had his pistol also drawn and directed at Tarwater; presently Will turned, fired upon and killed the deceased, Sam Harris. Men in the crowded lobby, some already seeking safety, made a rush when this shot was fired. In this moment of diversion Tarwater drew his pistol, fired first at Will Carter, and instantly engaged in a pistol duel with Isham Carter. Isham was killed; Tarwater and Will wounded.

Defendant's version is that he was called when his brother came home to prevent Isham's return to the place of difficulty; that he went along to keep him out of trouble; that he took the pistol from Isham's person, not knowing he had another; that there were only two pistols; that he was engaged in preventive effort when Harris struck him over the head with a pair of pliers; that he was so stunned by the blow that he did not realize what was done thereafter.

The state's testimony, however, abundantly supports the view that both came in with pistols drawn; that both entered into the attack on Tarwater. Some witnesses testify that Will called to his brother to shoot Tarwater. State witnesses testify that Harris was present taking up a collection; had in his hands a list and a cigar box to receive the collection; that he had no pliers; was making no attack on Will when he was shot.

One version, supported by the testimony of Tarwater and others, is that Harris, seeing the menaced position of Tarwater, and making way to the exit through the crowd, ran against or pushed Will Carter around, creating a diversion in Tarwater's favor; that Harris then stumbled against the wall and as he turned was shot by Will Carter.

Without added detail we do not question that the issue on murder in the first degree was one for the jury; that the affirmative charge on this issue was properly refused; and denial of a new trial for want of sufficient evidence was without error.

The evidence fully warranted a finding that defendant went with his brother to back him up in beating Tarwater at the point of their pistols, and with the purpose to kill Tarwater or any other man who should interfere. Will fired the first shot.

■ From the beginning of the altercation between Isham and Tarwater to the tragic end was one continuous affair. What was said and done by each of the participants was of the res gestæ and admissible.

■ Testimony of E. F. Brown, that just after the shooting he asked Will Carter if he had a gun, that he took it from his person and found one empty cartridge in it, was clearly proper.

■ Evidence of the coroner that he found on the dead body of Isham Carter some 64

cartridges fitting the two pistols in evidence was properly received.

The evidence of active participation in the difficulty was evidence of a common purpose or conspiracy. The cartridges were corroborative of other facts as to deadly purposes of Isham and Will at the time. So the pistols identified as being those used by Isham were properly admitted. Evidence that Tarwater had trouble with other negroes on other and previous occasions was properly rejected.

Defendant's witness E. D. Davis was, on cross-examination, questioned as to certain statements made by him on a coroner's hearing. The witness was permitted and directed to read the whole of such former testimony as taken by a court stenographer. On objection by defendant, the solicitor stated: "For the purpose of impeaching him."

If this was not deemed sufficient to properly limit the testimony to purposes of impeachment, an objection should have been interposed on such ground, or the court requested to give an instruction. Thomas Furnace Co. v. Carroll, 204 Ala. 263, 266, 85 So. 455. The proper practice was pursued in first allowing the witness to refresh his recollection by reading the entire note of testimony; then cross-examining him on such points as were at variance with his testimony on the stand. In case of denial, such former statements became admissible when proved to be correct. It became the right of the defendant, if he so desired, to thereafter offer the whole of such former testimony. In this case, however, he did not so elect. It was offered by the state, and refused on defendant's objection. We find no error in these rulings. Manning v. State, 217 Ala. 357, 116 So. 360; Wills v. State, 74 Ala. 21.

Defendant interposed a plea of "not guilty by reason of insanity" along with the plea of "not guilty." At the conclusion of the evidence defendant withdrew the insanity plea. The solicitor then stated: "I thought you would."

Appellant argues the motion for new trial should have been granted because of this remark of the solicitor. The record shows no objection at the time, no ruling of the court then invoked in any way. The record does not disclose that the remark was made in a "sneering and sarcastic" manner as argued. We find nothing here to review. How this remark could influence the jury to convict defendant is difficult to imagine.

In his closing argument the solicitor said: "We have a case where two negroes left the scene of the difficulty, went home and armed themselves, and returned to the scene of the difficulty and killed a man."

This statement was inaccurate in that this defendant was not shown to have left the scene of the difficulty with Isham. But the objection to the argument was this: "The defendant's counsel objected and moved to exclude the argument on the ground that there was no evidence before the jury that the defendant went down there armed with anything. All the testimony shows the defendant took the gun away from his brother at the corner of the bath house, and defendant's counsel moved to exclude it."

As before shown, there was much evidence to support the statement of the solicitor as against this objection. The force of the argument lay in the fact that they went armed to the place of the killing following up a difficulty and killed a man.

The mere inaccuracy now complained of could hardly have had influence with the jury. In all events the court was due to have such error in stating the evidence called to his attention as well as to the attention of the solicitor. No appeal to race feeling on the part of the jury appears in such remark. It is wholly unlike Moulton v. State, 199 Ala. 411, 74 So. 454. See Owens v. State, 215 Ala. 42, 109 So. 109.

Charge 26 refused to defendant was misleading; was not a correct statement of the law. "Deliberation," as used in the charge, is not an essential element of murder in the second degree; an offense covered by the indictment and properly submitted to the jury along with the higher offense. Code, § 4556, form 77.

Charge 31 refused to defendant has been often condemned, and former cases approving same overruled. Ex parte Davis, 184 Ala. 26, 63 So. 1010; Pippin v. State, 197 Ala. 613, 73 So. 340; Ex parte Anderson, 209 Ala. 489, 96 So. 636.

We have considered all the assignments of error and questions presented in brief for appellant, and have considered all questions raised in the bill of exceptions, and examined the record as required in such cases. We find no error to reverse. No occasion for further discussion appears to us. Indeed, several matters already written upon appear quite elementary or obvious.

The date fixed by the trial court for the execution of the sentence of the law having passed, we now fix Friday, July 26, 1929, as the date upon which such sentence shall be executed as required by law.

Affirmed.

All the Justices concur.