27 So.2d 872

RAY v. STATE.

2 Div. 224.

Supreme Court of Alabama.

Nov. 21, 1946.

Wm. N. McQueen, Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

F. F. Windham, of Tuscaloosa, for appellant.

LAWSON, Justice.

The appellant was indicted for the offense of murder in the first degree by a grand jury of Sumter County, and upon his trial upon said indictment was convicted of murder in the second degree, and his punishment was fixed by the trial jury at imprisonment in the penitentiary of this State for a period of fifty years. Judgment and sentence were in accord with the verdict.

Clay Hurst died about 5:00 A.M. on the morning of February 11, 1946, as a result of a knife wound admittedly inflicted by appellant some time between 9:30 P.M. and 11:00 P.M. Sunday night, February 10, 1946. It is appellant's insistence that he acted throughout in an effort to save his own life, or to save himself from grievous bodily harm at the hands of the deceased.

The deceased, his wife, Kathleen, and their son, Willie C., lived at or near the town of Panola, in Sumter County. A number of colored people gathered at the Hurst home on the night of February 10th. There was dancing and some liquid refreshments. According to witnesses for defendant, Kathleen Hurst sold whisky to those present. This Kathleen denied and claimed that the only intoxicants consumed were brought to her home by the visitors.

Peace and harmony seems to have prevailed until one Archie Knott decided to leave and requested his wife, Ida May, to accompany him. They left the house and proceeded into the front yard of the Hurst home, where they engaged in a fight. This fight seems to have caused excitement sufficient to empty the house of practically all of its occupants.

Kathleen Hurst and Willie C. Hurst, wife and son, respectively, of the deceased, testified in behalf of the State as to the events which transpired from the beginning of the fight between Archie Knott and his wife to the fatal encounter. Their testimony may be summarized as follows: Clay Hurst, the deceased, went out into the yard for the purpose of breaking up the fight and told the participants they would have to stop fighting or leave his yard. James Ray, a brother of the defendant, entered the argument and pointed a pistol at deceased, who was unarmed. Deceased re-entered his house and secured a pistol which his wife, Kathleen, took away from him and which Willie C. hid under the mattress. The deceased returned to the yard unarmed where he talked to James Ray, who again pointed a pistol at deceased. James Ray hit deceased over the head with the pistol. Deceased backed away from James Ray toward the defendant, Felix Ray, who was standing behind deceased. Felix Ray then "grabbed" deceased from the rear and with his right hand stabbed deceased over the latter's right eye.

The only other occurrence witness for the State was P. M. Brown, whose testimony differs from that of Kathleen and Willie C. Hurst in the following respect. Brown testified that when the deceased first returned to the yard he was unarmed but that when James Ray hit deceased with the pistol it fell to the ground and the deceased obtained possession of the pistol, although he made no attempt to shoot James Ray; that deceased had possession of the pistol as he backed toward Felix Ray and as the latter "grabbed" deceased and inflicted the mortal wound from behind deceased.

The defendant testified in his own behalf as follows: "The first thing, I was dancing and Archie Knott came to me and told me to go on the porch with him. We got to the door and his wife came to the door and told him if he wanted to go anywhere else to go ahead. He started the fight right there on the porch and then got on the ground. Sam Bailey came out and told them not to fight there. Then Clay (deceased) came out and got a paling and hit Sam Bailey, and then he went in the house and got his gun and run back out and throwed the gun up in my face and said he was going to kill me, and I grabbed a knife out of my pocket and struck him. He was trying to shoot me when I struck him." The defendant further testified that he did not know whether the deceased pointed the pistol at James Ray and that he did not see James point a pistol at deceased; that he was only a foot or a foot and a half away from deceased when the pistol was

drawn on him and he stabbed deceased while they were facing each other.

The testimony of the other eyewitnesses who testified in behalf of defendant may be summarized as follows: When deceased first came out of the house he did not have a pistol but did secure a fence railing, with which he hit Archie Knott and Sam Bailey, who was trying to break up the fight between Archie and his wife, Ida May. James Ray made some remark to deceased, who went back into his house and later returned to the yard with a pistol which he pointed at James Ray. James Ray moved away from deceased, whereupon deceased turned and pointed the pistol at the defendant, Felix Ray, who then stabbed deceased while they were facing each other. According to the evidence for the defendant, neither he nor his brother James had a pistol on this occasion.

[1] There was no error in the admission of evidence as to what was said and done between the several parties from the time the deceased entered the yard to break up the fight between Archie Knott and his wife to the time of the stabbing of deceased. It appears that there was a general, intermittent row in which practically all of those present were involved. It was all one continuous transaction and the stabbing of deceased grew out of the whole unfortunate affair. Under such circumstances all that was said and done by those present at the place of the difficulty, immediately before the fatal encounter, was admissible as a part of the res gestae, as illustrating the conduct of the parties and shedding light upon the main issue—the guilt or innocence of the defendant of some decree of homicide. Jordan v. State, 81 Ala. 20, 1 So. 577; Carter v. State, 219 Ala. 670, 123 So. 50; Kirkland v. State, 209 Ala. 661, 96 So. 892; Rector v. State, 11 Ala.App. 333, 66 So. 857; Lightfoot v. State, 21 Ala.App. 278, 107 So. 734, certiorari denied 214 Ala. 264, 107 So. 735.

The confession of appellant was properly admitted in evidence, a sufficient predicate having been previously laid for its introduction under the many decisions of this court on the subject. Flanigan v. State, 247 Ala. 642, 25 So.2d 685; Johnson v. State, 247 Ala. 271, 24 So.2d 17; Daniels v. State, 243 Ala. 675, 11 So.2d 756. Moreover, appellant testified that he killed deceased and his testimony was in most material respects identical with the confession as related by Sheriff Harden. Therefore, no prejudice could have resulted to appellant by the admission of the confession. Cooley v. State, 233 Ala. 407, 171 So. 725.

The trial court did not err in permitting a non-expert witness to testify as to the appearance and location of the wound on the body of deceased. Kilpatrick v. State, 213 Ala. 358, 104 So. 656; Hill v. State, 146 Ala. 51, 41 So. 621; Rowe v. State, 243 Ala. 618, 11 So.2d 749.

Sam Bailey, a witness for appellant, testified that at the request of Kathleen Hurst, wife of deceased, he separated Archie Knott and his wife, Ida May, and that in doing so he had to throw Archie on the ground; that while he was holding Archie the deceased hit his (Bailey's) hand with a "paling." Counsel for appellant then propounded the following question to the witness: "What happened next?" Bailey answered: "Archie said, 'Come on, don't pay no attention to that.' and I went off then and Clay slipped behind me fixing to hit me with a stick." The solicitor for the State moved the court to exclude that part of the answer as "to what Clay was fixing to do." This motion was granted and that part of the answer of the witness was excluded. This action of the court was without error as the statement excluded was a mere conclusion or opinion of the witness. Barlew v. State, 5 Ala.App. 290, 57 So. 601; Wigerfall v. State, 17 Ala.App. 145, 82 So. 635; Valentine v. State, 19 Ala. App. 510, 98 So. 483; Hill v. State, 137 Ala. 66, 34 So. 406; Bettis v. State, 160 Ala. 3, 49 So. 781; Parker v. State, 165 Ala. 1, 51 So. 260.

James Ray testified in behalf of his brother, the defendant. On cross-examination the solicitor asked him the following question: "And you are under indictment —." Counsel for appellant objected before the question had been completed. There was no answer. The court instructed the jury not to consider the question. Counsel for appellant then moved that the jury be

discharged upon the ground, "I think that is going too far when they talk about an indictment against this man, because that doesn't mean anything. The law says an indictment is not evidence in any case." The court overruled the motion to discharge the jury and exception was interposed to this ruling. No reversible error appears in this connection. The appellant has no legitimate complaint to make as to the above rulings of the court. The court would not have committed error if it had permitted the State to show on cross-examination of this witness that he stood indicted for the same offense with which defendant was charged, as tending to show bias. McCormack v. State, 133 Ala. 202, 32 So. 268; Houston v. State, 203 Ala. 261, 82 So. 503; Wilkerson v. State, 140 Ala. 165, 37 So. 265; White v. State, 237 Ala. 610, 188 So. 388.

The allowance or exclusion of leading questions is within the discretion of the trial court. So it was permissible for the court to allow a leading question to the fourteen-year-old son of deceased, who was a witness for the State. Millhouse v. State, 235 Ala. 85, 177 So. 556; Williams v. State, 27 Ala.App. 293, 171 So. 386; McDaniel v. State, 24 Ala.App. 314, 135 So. 421, certiorari denied 223 Ala. 217, 135 So. 424.

The trial court ruled adversely to appellant in several instances on the admission and exclusion of evidence, to which no exceptions appear to have been taken. Without the reservation of an exception, there is nothing presented to us in that regard for review. Peters v. State, 240 Ala. 531, 200 So. 404.

Where there is no evidence in a case to support the remarks of counsel, they are properly excluded. Barddell v. State, 144 Ala. 54, 39 So. 975. Hence, the trial court did not err in excluding from the jury's consideration, on motion of counsel for the State, the argument of counsel for appellant that the crime was committed on a "dark" night, there being no evidence to support such a statement.

After the jury returned its verdict and before sentence was pronounced, counsel for defendant moved to discharge the defendant, notwithstanding the verdict, on the ground that the defendant was locked up in jail while the jury was deliberating on the case and had to be returned to the courtroom when the jury was ready to return its verdict. This motion was correctly overruled as it is not necessary that a defendant be present in the courtroom while the jury is out considering its verdict. State v. McGraw, 35 S.C. 283, 14 S.E. 630.

Charges 22, 23, 25, 26 and 27, which appear to have been requested by appellant and which bear the endorsement, "Refused E. F. Hildreth, Judge," are so worded as to indicate that James Ray was the defendant in this case. Such charges, of course, had no place in this proceeding and were properly refused.

Charges which single out the testimony of a particular witness for the consideration of the jury, or which tend to lead them to dissociate the part of the testimony specially called to their attention from the rest of the evidence in the case, often have been condemned. Hence there was no error in refusing Charges 14, A and F, requested by defendant. King v. State, 120 Ala. 329, 25 So. 178; Grant v. State, 97 Ala. 35, 11 So. 915; Crawford v. State, 112 Ala. 1, 21 So. 214; Frost v. State, 124 Ala. 71, 27 So. 550. In pointing out this defect in these charges we do not wish to be understood as holding them otherwise good.

The affirmative charge as requested by the defendant was correctly refused. The State insisted that the killing was unprovoked, unjustified, and hence unlawful, and offered testimony to sustain this insistence. On the other hand, the defendant insisted under his plea of self-defense that he took the life of Hurst in order to save his own life and that in doing so he violated no law of this State; and in this connection presented evidence tending to sustain him in this insistence. The evidence on practically every material inquiry was in conflict except as to the fact that the defendant stabbed the deceased. As a result of this conflict in the evidence, a jury question was, of course, presented. Witherspoon v. State, 168 Ala. 87, 53 So. 271; Sanders v. State, 243 Ala. 691, 11 So.2d 740. We are also of the opinion that the

motion for a new trial was properly overruled.

We have considered all questions properly presented by the record wherein the rulings were adverse to the defendant and have found no reversible error. It follows that the judgment appealed from must be affirmed.

Affirmed.

GARDNER, C. J., and FOSTER and STAKELY, JJ., concur.