74 So.2d 630

**Joe Ed PAYNE**

v.

**STATE of Alabama.**

**8 Div. 739.**

Supreme Court of Alabama.

Aug. 30, 1954.

No attorney for appellant.

Si Garrett, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for the State.

LAWSON, Justice.

Howard Kennamer was shot to death on December 10, 1952, in the store of Archie Russell in the Elon community, Madison County, Alabama. Joe Ed Payne was jointly indicted with his son Charles for the first degree murder of Kennamer. On motion of Joe Ed Payne, a severance was ordered and he was tried separately.

The jury returned a verdict of murder in the second degree and fixed punishment at imprisonment in the penitentiary for a term of twenty-five years. Judgment was in accord with the verdict. His motion for a new trial having been overruled and denied, Joe Ed Payne has appealed to this court.

The appellant was represented by counsel of his choice at arraignment and on the trial below, but he is not represented in this court by counsel and hence no brief has been filed in his behalf.

However, the filing of a brief is not essential to our consideration of an appeal by a defendant in a criminal case. Johnson v. State, 257 Ala. 644, 60 So.2d 818; Hymes v. State, 209 Ala. 91, 95 So. 383.

Section 389, Title 15, Code 1940, provides:

"In cases taken to the supreme court or court of appeals under the provisions of this chapter, no assignment of errors or joinder in errors is necessary; but the court must consider all questions apparent on the record or reserved by bill of exceptions, and must render such judgment as the law demands. But the judgment of conviction must not be reversed because of error in the record, when the court is satisfied that no injury resulted therefrom to the defendant."

It has been said that the statute quoted above, when construed *in pari materia* with others, makes the right of appeal in criminal cases one of substance, imposing on the court a duty to search the record for errors and if the question reserved is of substance which might have affected the result, it is of no importance that the appellant or his counsel has not argued the question in a brief. Wesson v. State, 238 Ala. 399, 191 So. 249.

The State has filed a brief which treats with a few of the questions presented for review.

We will first consider the rulings made by the trial court on the defendant's preliminary motions.

■ Before entering upon the trial, the defendant sought the permission of the court to withdraw his plea of "not guilty" previously interposed in order that he might file a plea in abatement. See § 279, Title 15, Code 1940. Such permission was denied. The defendant thereupon filed his plea in abatement which the trial court struck on motion of the State. Reversible error does not appear in this action of the trial court. Whittle v. State, 205 Ala. 639, 89 So. 43; Whitehead v. State, 206 Ala. 288, 90 So. 351; Wimbush v. State, 237 Ala. 153, 186 So. 145. See Owen v. State, 255 Ala. 354, 51 So.2d 541.

■ The trial court did not err in refusing to quash the venire of jurors drawn and summoned for the trial of the defendant. There was no showing of fraud on the part of the jury commission in filling the jury box or in drawing or summoning the jurors. Wimbush v. State, supra.

■ Two persons listed on the venire failed to appear, although duly summoned. These persons had not been excused from appearing and, whether summoned or not, their failure to appear was no ground for a continuance or for quashing the venire. § 67, Title 30, Code 1940; Brooks v. State, 248 Ala. 628, 29 So.2d 4.

■ Reversible error was not committed by the trial court in declining to grant a continuance at the request of the defendant or to put the State upon unsworn showings of two persons summoned as witnesses by defendant, but who were shown to be without the State by the return of the sheriff. Williams v. State, 224 Ala. 6, 138 So. 291.

■ The trial court did not err to a reversal in refusing to grant a continuance in order that counsel for defendant might institute mandamus proceedings against the jury commissioners. See Maund v. State, 254 Ala. 452, 48 So.2d 553.

■ The defendant was clearly not entitled to an affirmative instruction and the evidence fully supports the verdict of the jury, hence there is no occasion to set out the evidence in detail. However, we will briefly summarize the evidence so as to give a better understanding of the questions hereafter treated.

There had been bad feeling between the deceased and the members of the Payne family for several months. The deceased had been convicted a short time prior to the killing for the shooting of another son of appellant and the evidence tends to show that threats made by him to kill members of the Payne family had been communicated to them.

There was a lot of shooting in the store of Archie Russell on the evening of December 10, 1952. The defendant, Joe Ed Payne, was armed with a .45-caliber automatic pistol, while his son Charles had a .38-caliber Smith and Wesson Special snub-nose revolver. The deceased was carrying a .38-caliber Smith and Wesson Special "long barrel" revolver.

Russell's store where the shooting occurred is twenty feet wide and thirty feet long. It faces south. There is an aisle across the front of the building and one on each side, so that the counter is described as having the shape of a horseshoe, the opening being at the back or north end of the store.

The deceased arrived at the Russell store around six o'clock on the evening of the killing. He and Archie Russell were standing in the front of the store on the east side when the defendant and his son Charles entered. The deceased was facing the back of the store and Archie Russell was facing toward the front. The only other person present at the time was Mrs. Russell and she was standing in the west aisle at the rear or north end of the store.

According to the State's evidence, the defendant and Charles Payne entered the Russell store at approximately the same time. The defendant turned to his left and

proceeded toward the back of the store, walking down the west aisle. His son, Charles Payne, turned to his right and followed Archie Russell down the east aisle toward the rear of the store. Charles Payne passed within a few feet of Howard Kennamer, but neither spoke.

The evidence for the State tends to show that at about the time that Archie Russell had reached the rear of the store and had turned toward the front in order to go behind his counter, Charles Payne whirled with his pistol drawn and he and Howard Kennamer, the deceased, began shooting at each other at approximately the same time. Archie Russell and his wife both testified that they could not say who fired the first shot. Charles Payne, who testified as a witness on behalf of his father, stated that it was the deceased who fired the first shot, which hit him before he turned. The defendant did not testify in his own behalf.

Charles Payne was shot at least seven times within a period of a few seconds after the first shot was fired. He fell to the floor, unable to continue shooting. The deceased, after he was badly wounded by shots fired by Charles Payne, continued to shoot at Charles Payne.

It is without conflict in the evidence that just after the deceased had stopped shooting at Charles Payne, the defendant reached the front of the store building where deceased was lying on the floor and fired the pistol with which he was armed directly at the head of the deceased. Immediately after firing that shot, the defendant struck deceased in the forehead with his pistol and then kicked him on the side of his head.

Archie Russell and his wife both testified in substance that immediately after he kicked the deceased, the defendant left the store and remained away for a period of from three to five minutes; that upon his return the defendant made statements indicating that he had observed Kennamer was still alive, whereupon the defendant stood directly over Kennamer and fired a shot directly into Kennamer's chest from the pistol which he was carrying.

It is without dispute in the evidence that Kennamer was shot four times in the chest and once in the head. Three of the wounds in the chest were caused by bullets fired from a .38-caliber pistol, the type pistol which Charles Payne used in the shooting. It was established without serious dispute that Kennamer was shot in the head by a bullet from a .45-caliber pistol and it was that caliber pistol which the evidence shows without dispute the defendant had on the occasion of the shooting.

There was some difference of opinion among the expert witnesses as to whether the fourth chest wound was caused by a .38-caliber or a .45-caliber bullet. That bullet was not recovered and was not available for examination.

As pointed out above, the defendant did not testify and no testimony was elicited on his behalf tending to show that he did not shoot the deceased in the manner as testified to by State witness Archie Russell. Mrs. Russell was called as a witness by the defendant and her testimony was in practically all respects the same as that of her husband. Charles Payne was unable to testify as to any event which occurred subsequent to the time he was shot by Howard Kennamer.

The theory of the defense appears to have been that the defendant shot to prevent the killing of his son by the deceased.

We come now to a consideration of the questions properly presented for review which we think are worthy of treatment in this opinion.

█ Photographs showing the exterior and interior of the building where the homicide occurred were introduced by the State. It was shown by a witness who was familiar with the premises that the photographs truly depicted the physical condition of the scene of the homicide on the day it occurred. They were properly admitted and it was correct to permit witnesses to refer to them in illustrating their testimony. Pilley v. State, 247 Ala. 523, 25 So.2d 57, and cases cited.

█ It was not error to permit Dr. James Carpenter, a witness for the State, who ar-

rived at the scene of the homicide a short time after the shooting ended, to testify that at the time he arrived he saw the defendant "* * * had some kind of instrument that looked like a pistol to me." Way v. State, 155 Ala. 52, 46 So. 273; Trailer v. State, 8 Ala.App. 217, 63 So. 37.

Photographs of the dead body of Howard Kennamer were admitted without error. Smarr v. State, 260 Ala. 30, 68 So.2d 6; Maund v. State, 254 Ala. 452, 48 So.2d 553.

State witness C. D. Brooks, who was shown to have been in the employ of the State of Alabama as a toxicologist for a period of fifteen years, was permitted to testify as to which of the wounds that he observed on the head and body of deceased were sufficient to have caused death. This witness was unquestionably shown to possess sufficient qualifications to testify as an expert in this field. Phillips v. State, 248 Ala. 510, 28 So.2d 542.

The trial court correctly overruled a number of objections interposed by counsel for the defendant to questions propounded by the solicitor calling for evidence of the circumstances and conditions surrounding the actual killing. George v. State, 240 Ala. 632, 200 So. 602.

Whether allegedly leading questions will be permitted is largely within the sound discretion of the trial court. Millhouse v. State, 235 Ala. 85, 177 So. 556; Ray v. State, 248 Ala. 425, 27 So.2d 872.

Over objections of the defendant, the State was permitted to introduce evidence as to Archie Russell saying, "Joe Ed, don't shoot him any more. He's going to die anyway. I wouldn't shoot him any more."—while the defendant had his pistol aimed at the deceased after the latter had already been shot and was lying on the floor. This statement or explanation may be regarded as part of an occurrence which still was in progress when it was made. It was so intimately connected with the defendant's conduct as to characterize and explain it, to shed light on the purpose which the defend-ant manifested by aiming his pistol again at the deceased, and to show how he was influenced to refrain from further shooting. The statement was a part of the res gestae and was properly admitted. Hall v. State, 11 Ala.App. 95, 65 So. 427, and cases cited.

It was not error to permit the witness Robert Rigsby, coroner of Madison County, to testify that the bullet which he removed from the back of the deceased was a .45-caliber bullet. Baugh v. State, 218 Ala. 87, 117 So. 426. That bullet was properly admitted in evidence. Crawford v. State, 112 Ala. 1, 21 So. 214; Moss v. State, 152 Ala. 30, 44 So. 598; Grissett v. State, 241 Ala. 343, 2 So.2d 399; Vernon v. State, 239 Ala. 593, 196 So. 96.

There was no error in allowing the State to introduce in evidence a .45-caliber automatic pistol which witnesses identified as the one the defendant had at the time of the shooting or which was just like the one the defendant had at that time. McGuffin v. State, 178 Ala. 40, 59 So. 635. Empty and loaded .45 shells which were properly identified were likewise admitted in evidence without error. Eldridge v. State, 247 Ala. 153, 22 So.2d 713.

The pistol shown to have been the one used by Charles Payne and the cartridges which fit that pistol, empty and loaded, found at the scene of the homicide, were admitted without error. Carter v. State, 219 Ala. 670, 123 So. 50.

In view of the evidence tending to show that the defendant and his son, Charles Payne, conspired to kill Howard Kennamer, the trial court did not err to a reversal in permitting the State to show that two days prior to the killing, Charles Payne sought to secure the return of two rifles held by the officers of Madison County in connection with another case in which Charles Payne was involved. Saulsberry v. State, 178 Ala. 16, 59 So. 476.

The defendant was permitted to show by his brother Clyde and by his son Nelson that they were shot at on or about January 13, 1952, and that Howard Ken-

406

namer was subsequently tried for that shooting. But Clyde and Nelson Payne were not permitted to testify as to the result of that trial. Error, if any, in such rulings of the trial court was harmless in view of the fact that the defendant introduced in evidence, without objection, the record of the court showing Howard Kennamer's conviction.

There was no error in permitting the State on the cross-examination of defense witness Clyde Payne to show that he had been convicted of petit larceny in the circuit court of Madison County. §§ 434, 435. Title 7, Code 1940; Hutchens v. State, 207 Ala. 126, 92 So. 409; Muse v. State, 29 Ala.App. 271, 196 So. 148.

The State was properly permitted to show that a few hours before the killing the defendant purchased a large amount of ammunition of the kind which would fit the type of pistol with which he was armed at the time of the killing. Tucker v. State, 198 Ala. 4, 73 So. 385. Likewise, it was proper to permit the State to show that a very short time prior to the shooting the defendant sought advice as to how to load the .45-caliber automatic pistol which he then had in his possession. The trial court did not abuse its discretion in permitting the State to make this proof after the defendant had rested his case. Granison v. State, 117 Ala. 22, 23 So. 146; Walker v. State, 139 Ala. 56, 35 So. 1011.

We find no reversible error in any of the rulings of the trial court made in connection with jury argument.

The gravity of charge, volume of evidence, credibility of witnesses, inferences to be drawn from various phases of evidence, and legal principles involved, to be presented in instructions to the jury, are all matters within proper scope of argument. Jackson v. State, 239 Ala. 38, 193 So. 417.

On two occasions, exceptions were not taken to the action of the trial court in overruling the objection of defendant's counsel to remarks made by the solicitor in argument to the jury. The remarks of the solicitor were not within the recognized exception to the rule requiring objection and exception and, hence, in the absence of exception those rulings of the trial court are not subject to review here. See Anderson v. State, 209 Ala. 36, 95 So. 171; Mickle v. State, 226 Ala. 616, 148 So. 319; James v. State, 246 Ala. 617, 21 So.2d 847.

Any prejudicial effect of the remark of the solicitor that if Charles Payne had not been hurt "we might have three more unsolved homicide cases," was removed by the action of the trial court in sustaining defendant's objection to such remark and admonishing the jury to disregard it. Burkett v. State, 215 Ala. 453, 111 So. 34; James v. State, supra. The same is true of a remark made by the solicitor to the effect that Howard Kennamer was going to be killed sooner or later "if he stayed here."

The proper hypothesis for a requested charge in a criminal prosecution is rested on belief from the evidence. Wesson v. State, 251 Ala. 33, 36 So.2d 361. Defendant's requested written charges 1, 2, 3, 8, 15, 16, 27, 28, and 31 were not so hypothesized and hence their refusal does not constitute reversible error. Bush v. State, 211 Ala. 1, 100 So. 312; Williams v. State, 36 Ala.App. 26, 58 So.2d 646, certiorari denied, 257 Ala. 337, 58 So.2d 653. See Johnson v. State, 257 Ala. 644, 60 So.2d 818. We pretermit consideration of whether those charges assert sound propositions of law.

Charge 9, refused to defendant, was not a correct statement of the law. Deliberation is not an essential element of murder in the second degree, an offense covered by the indictment and properly submitted to the jury along with the higher offense. Carter v. State, 219 Ala. 670, 123 So. 50; Nearer v. State, 198 Ala. 1, 73 So. 429.

In the instant case conviction was not rested on circumstantial evidence, hence it was not reversible error for the trial court to refuse defendant's written charge 14. Smith v. State, 252 Ala. 1, 39 So.2d 586. See Parsons v. State, 251 Ala. 467, 38 So.2d 209; Colvin v. State, 32 Ala.App. 142, 22

So.2d 544, reversed on other grounds, 247 Ala. 55, 22 So.2d 548.

There was no dispute or controversy about the name of deceased, hence it was not error to refuse the defendant's written charge 18. We have said: "A charge should be refused the only tendency of which would be, if given, to throw doubt or discredit on a fact in the case established without conflict of evidence." Rose v. State, 117 Ala. 77, 23 So. 638, 639. See Reedy v. State, 246 Ala. 363, 20 So.2d 528. In Stallworth v. State, 146 Ala. 8, 41 So. 184, it was held that a similar charge should have been given, but in that case the name of the deceased was a controverted issue of fact.

Defendant's written charge 20 is unintelligible. It was properly refused. Steele v. State, 159 Ala. 9, 48 So. 673.

Charge 21 refused to defendant has been often condemned and former cases approving same overruled. Carter v. State, 219 Ala. 670, 123 So. 50; McDowell v. State, 238 Ala. 101, 189 So. 183; Kent v. State, 252 Ala. 371, 41 So.2d 197; Ray v. State, 257 Ala. 418, 59 So.2d 582.

Defendant's refused charge 23 deals with the question of the competency of defendant as a witness in his own behalf and the credit to be accorded his testimony. The defendant did not testify. The charge is abstract and was properly refused. Williams v. State, 245 Ala. 32, 15 So.2d 572.

Charge 24 was refused defendant without error. It ignores the tendency of the evidence going to establish a conspiracy. Spencer v. State, 228 Ala. 537, 154 So. 527; Skumro v. State, 234 Ala. 4, 170 So. 776. See Haygood v. State, 252 Ala. 3, 38 So.2d 593.

In Ferguson v. State, 141 Ala. 20, 37 So. 448, this court held that the refusal of a charge in the language of defendant's written charge 25 was reversible error. In the instant case, however, no rational inference can be drawn from the evidence that there was an absence of complicity on the father's part in the acts perpetrated by his son and the evidence also shows without dispute that the defendant actually participated in the killing. We are of the opinion that charge 25 was wholly abstract and that it was refused without error. Espey v. State, 31 Ala.App. 351, 17 So.2d 430.

Defendant's charge 26, on the right of defendant to act in defense of his son, was fully covered by the general charge and its refusal was not prejudicial error. § 273, Title 7, Code 1940; Locklayer v. State, 209 Ala. 605, 96 So. 759.

Defendant's charge 30 was properly refused. The charge states the law incorrectly and is abstract. There was no evidence tending to show that the deceased ever shot at the defendant.

Charge B requested by the defendant was invasive of the province of the jury and was properly refused.

Although the trial court's general charge was most comprehensive and able, the State solicitor saw fit to request a large number of written charges, many of which were given. We will not undertake to consider each of those charges separately in this opinion. Most of them have been held by this court to be properly given in cases of the kind here under consideration. We would like to point out, however, that charge 2 given at the request of the State was not approved by this court in the case of Jenkins v. State, 82 Ala. 25, 2 So. 150. But we are satisfied that no injury resulted to the defendant from the giving of this or any other charge requested by the State.

Duly mindful of our duty in cases of this character, the record has been examined for any reversible error. We have herein dealt with all questions calling for serious treatment.

We find no reversible error in the record and the cause is due to be and is affirmed.

Affirmed.

SIMPSON, STAKELY and MERRILL, JJ., concur.