229 So.2d 40

### Tony Ray BROWN
v.
### STATE.

I Div. 5.

Court of Criminal Appeals of Alabama.

Dec. 9, 1969.

No Attorney for appellant.

MacDonald Gallion, Atty. Gen., and John·A. Lockett; Asst. Atty. Gen., for the State.

ALMON, Judge.

Appellant was indicted by a Washington County Grand Jury for murder in the first degree. A jury found him guilty of manslaughter in the first degree and fixed his punishment at ten years in the penitentiary.

The decedent died of wounds received either late Christmas Eve or early Christmas morning of 1966. There is no need to set forth the evidence since the case must be reversed for erroneously admitting into evidence certain blood-stained clothes, allegedly belonging to appellant, which were seized in an illegal search.

The record shows that Sheriff Sullivan went to Anna LeCate's house looking for clothes that appellant wore Christmas Eve night. We quote from Sheriff Sullivan's testimony:

"Q Sometime after Sunday did you go to Anna LeCate's house where this defendant was living?

"A Yes, sir.

"Q In search of what?

"MR. HURST: I object. He would have no right to search the premises without a search warrant.

"MR. TURNER: I am just asking what did he go to the house looking for; not what he searched after he got there.

"JUDGE LINDSEY: This is out of the presence of the jury.

"A I went over there looking for the clothes Tony Brown had on Saturday night.

"Q Prior to that time did you have a search warrant issued here in the courthouse in Chatom?

"A To the best of my knowledge I did. In case I had to search.

"Q I will show you an affidavit here. Did you sign that affidavit before Georgene O. Wood, Judge of the Court of General Sessions?

"A Yes, sir.

"Q All right, and after you signed that affidavit did Georgene O. Wood the Judge of the Court of General Sessions, issue that search warrant to you?

"A Yes, sir.

"Q After you got that search warrant issued did you at that time go over to Anna LeCate's house where Tony Brown lived?

"A Yes, sir.

"Q All right, and when you got over there was Anna LeCate there?

"A Yes, sir.

"Q Did you go in the house?

"A Yes, sir."

.The affidavit and search warrant issued by Judge Wood read as follows:

## "REQUEST FOR SEARCH WARRANT

"STATE OF ALABAMA        STATE'S EXHIBIT
WASHINGTON COUNTY       NO. <u>3 mnw</u>

"Before me, Georgine O. Wood, Judge of the Court of General Sessions of said County and State, personally appeared C. J. Sullivan, who being by me duly sworn, deposes and says that he has probable cause to believe that Tony Brown did feloniously kill David Clark and that certain evidence of said crime is concealed on the person or the premises of the said Tony Brown or where he resided at the home of Anna LeCate in Fruitdale, Washington County, Alabama.

"/s/   <u>C. J. Sullivan</u>

"Sworn and subscribed before me this the 26th day of December, 1966.

"<u>Georgine O. Wood</u>
Judge of the Court of
General Sessions"

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## "SEARCH WARRANT

"STATE OF ALABAMA        STATE'S EXHIBIT
WASHINGTON COUNTY       NO. <u>4mnw</u>

TO ANY SHERIFF OF SAID COUNTY:

"Proof by affidavit having this day been made before me by C. J. Sullivan, that he has probable cause to believe and does believe that Tony Brown did feloniously kill David Clark and has certain evidence concealed on his person or his premises or at his residence in the home of Anna LeCate in Fruitdale, Washington County, Alabama.

"You are therefore commanded at any time day or night to make immediate search of the person of Tony Brown or his premises or his home in the residence of Anna LeCate in Fruitdale, Washington County, Alabama, for any evidence pertaining to the felonious killing of David Clark; and if you find the same, or any part thereof, to bring it forthwith before me at the Courthouse at Chatom, Washington County, Alabama.

"Dated this 26th day of December, 1966.

"/s/   <u>Georgine O. Wood</u>
Judge of Court of
General Sessions

"Executed by taking into my possession the following described property; to-wit:

"One blue plaid shirt; one pair boots; one pair of pants; one pair of shoes which property was taken from the person, the premises or the home of Tony Brown in the residence of Anna LeCate in Fruitdale, Washington County, Alabama.

"This the 28th day of December, 1966.

"/s/   <u>C. J. Sullivan</u>
Sheriff"

■ The affidavit made before Judge Wood was insufficient as a basis for issuing the search warrant for at least two reasons: (1) the affidavit is conclusory because it does not set out any facts from which the magistrate could make a finding of probable cause either that a felonious killing had taken place or that any evidence was concealed either on the person or premises described; and (2) the affidavit did not describe the property to be seized.

"A search warrant can only be issued on *probable cause*, supported by affidavit, naming or describing the person, and particularly describing the *property*, and the place to be searched." (Emphasis added) Title 15, Sec. 102, Code of Alabama, 1940.

■ The affidavit states that Sheriff Sullivan has probable cause to believe, etc., but the very essence of search and seizure law is that the issuing magistrate must make a finding of probable cause from facts communicated to the magistrate by the affiant. See Knox v. State, 42 Ala. App. 578, 172 So.2d 787, cert. den. 277 Ala. 699, 172 So.2d 795; Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

■ One of the contentions in the motion for a new trial is that the trial judge erred in admitting evidence of appellant's inculpatory statement or confession. This matter was before the trial court on two occasions. First, on a pre-trial motion to suppress the alleged confession and, second, during the trial on voir dire outside the presence of the jury. We quote from Sheriff Sullivan's testimony at the pretrial hearing as follows:

"Q Now then, do you recall that on Sunday night, December 25, when Mr. Brown was brought into your office that I at that time advised him that he was under arrest for suspicion of murder of Mr. David Clark?

"A Yes, sir.

"Q And do you also recall me advising him on that occasion that he didn't have to make a statement; that if he did make a statement it would be used against him, or could be used against him in a court of law?

"A Yes, sir.

"Q That if he didn't have an attorney there we would get one for him, that he was entitled to get one?

"A Yes.

"Q Did he say that he was unable to employ an attorney? Let me ask you this did he say he would make a statement after I advised him of his Constitutional rights?

"A The best of my knowledge he told us he would tell us what happened.

"Q And he made no statement about an attorney at all?

"A No, sir.

"Q Did anybody sitting there while we questioned him threaten him, or use any coercion, or offer any reward or hope of reward to get him to make a statement?

"A No, sir.

"Q You said we also interrogated him Monday night?

"A Yes, sir.

"Q Did we also advise him again of his Constitutional rights at that time?

"A Yes, sir.

"Q Did anybody there Monday night threaten him, intimidate him, use any coercion, or offer any inducement or reward or hope of reward

to get him to make a statement on Monday night?

"A   No, sir.

"Q   What about Tuesday night, did we again advise him of his Constitutional rights?

"A   Yes, sir, every time we talked to him he was advised."

Sheriff Sullivan and Honorable Edward P. Turner, Jr. testified during the trial outside the presence of the jury as follows:

"Q   Did I advise the defendant he was under suspicion of murder, of having killed Mr. Clark?

"A   You certainly did.

"Q   Did I also advise him that he had the right to remain silent and not make any statement?

"A   Yes, sir.

"MR. HURST: I object. That would be hearsay.

"MR. TURNER: I will be glad to testify.

"WHEREUPON, HON. EDWARD P. TURNER, JR., being duly sworn, testified as follows:

"MR. HURST: I ask that Mr. Sullivan be put under the rule while Mr. Turner testifies.

"Sheriff Sullivan leaves the court room.

"MR. TURNER: Do you want to question me, Grady, or just want me to state what I told him, or how do you want to proceed?

"MR. HURST: I suggest you state what you want to.

"A   My name is Edward P. Turner, Jr., and I am Assistant District Attorney for Washington County, Alabama, and was such on December 25, 1966. In my official capacity as Assistant District Attorney for Washington County, I conducted the investigation of the death of Mr. David Clark in connection with the Sheriff's Department of Washington County. The defendant in this case, Mr. Tony Ray Brown, was picked up on my instructions to the Sheriff's Department on my order and brought to the Washington County jail, as I recall, on Sunday night, December 25, 1966. Mr. Brown was brought into the sheriff's office, as I recall, that night to be questioned as to the circumstances surrounding the death of Mr. Clark. When Mr. Brown was brought into the Sheriff's Department for questioning there was no one present but Mr. Brown and myself and the sheriff, C. J. Sullivan. When Mr. Brown was brought into the office either the sheriff or I told him that we wanted to question him concerning the death of Mr. Clark. At that time I advised Mr. Brown that he, along with others, was under suspicion of murdering Mr. Clark; that he did not have to make a statement or tell us anything in connection with this investigation; that he had a right to a lawyer to be present while he was being questioned by us; if he could not afford a lawyer that the State or County, I don't recall whether I said the State or County, that he would be furnished a lawyer by either the State or County, and further advised him that if he made any statement it could be used against him in the event he was later charged with having murdered Mr. Clark; and that also he had a right to stop answering questions or to refuse to answer them at any time he so desired. At that time Mr. Brown told the sheriff

and I that he would cooperate and answer questions.

"DIRECT EXAMINATION BY MR. EDGAR:

"Q Did the defendant here then voluntarily answer questions propounded to him and make statements?

"A Yes, sir.

"MR. HURST: I object. Voluntarily calls for an opinion or conclusion of the witness.

"JUDGE LINDSEY: I sustain the objection.

"Q Was this defendant threatened to cause him to make a statement?

"A No, sir.

"Q Was he offered any reward or hope thereof to cause him to make a statement?

"A No, sir, he wasn't.

"Q Then he proceeded to make a statement?

"A Yes, sir. As I recall, he didn't implicate himself in the murder of Mr. Clark on the first questioning.

"JUDGE LINDSEY: Was any inducement offered to him?

"A No, sir.

"JUDGE LINDSEY: No hope of reward held out to him?

"A No, sir.

"Q Did he state to you on that occasion that he didn't want a lawyer and was willing to be questioned?

"A He didn't tell me and the sheriff that he didn't want a lawyer. He told us after I advised him of the charge and what his rights was, as

I recall he stated something to the effect that he didn't have anything to hide and he would be glad to answer questions.

"Q Then you do say that he willingly was questioned?

"A Yes, sir, He told us, after I talked to him he said something to the effect—I'm not saying this is the exact words, but something to the effect—that he didn't have anything to hide; that he had not done anything wrong and he would be glad to answer any questions we asked him. And we proceeded to talk to him about it.

"JUDGE LINDSEY: Did he seem to be rational in every respect and appear to know what he was doing?

"A Yes, sir. We had seen him previously that Sunday afternoon when we went to Bouquet's trailer where Mr. Clark's body was, and he looked no different after we picked him up and brought him to the jail than he did over at the house, or at any other time during the week."

We conclude that the proper predicates were laid and there was ample evidence from which the trial judge could make a determination of voluntariness. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; Berry v. State, 231 Ala. 437, 165 So. 97; Potter v. State, 44 Ala.App. 376, 209 So.2d 856.

Appellant further insists in his motion for a new trial that the alleged confession was improperly admitted because the State had failed to prove the corpus delicti.

In holding that the physical condition of the victim's body established the corpus delicti, the Supreme Court stated in Shelton v. State, 217 Ala. 465, 117 So. 8:

"The woman was found dead in her bed at home, with her head badly beaten up

—bruised, lacerated, and bloody—apparently by severe blows from a heavy instrument, and a bloody oak stave was found in the yard. Furthermore, it was shown by competent medical testimony that these wounds were sufficient to cause death.

"The corpus delicti must of course be shown independently of the confession of the accused; that is, the state must show not only the fact of a victim's death, but also that death was caused by the criminal agency of another. 30 C.J. 284, § 529; Pearce v. State, 14 Ala.App. 120, 72 So. 213; Ducett v. State, 186 Ala. 34, 36, 65 So. 351. This requirement is satisfied when it appears that death was not the result of accident or natural causes or of suicide. 30 C.J. 287, § 531; Parsons v. State, 179 Ala. 23, 60 So. 864; Saulsberry v. State, 178 Ala. 16, 21, 59 So. 476; Stubbs v. State, 148 Miss. 764, 114 So. 827.

"The corpus delicti was here established beyond the possibility of a doubt by the physical condition of the victim's body, and the defendant's confession that he killed her with the oak stave was properly received."

See also Connell v. State, 39 Ala.App. 531, 105 So.2d 695, cert. denied 268 Ala. 692, 105 So.2d 700.

■ In the instant case, we are of the opinion that the testimony of State Toxicologist Dr. Nelson E. Grubbs that the victim's injuries which caused death were a result of a tremendous crushing blow, that he was badly beaten on the legs and head, and that he had a broken arm; was sufficient under the rule in *Shelton*, supra, to establish the corpus delicti.

For the error in admitting appellant's blood stained clothes in evidence, the judgment appealed from is due to be and the same is hereby reversed and the cause remanded.

Reversed and remanded.